Paul D. Graves, J.
Defendant was indicted in a separate indictment containing two counts for murder, first degree, and on four other indictments each containing separate counts for sodomy, first degree, and assault, second degree.
On his arraignment September 23, 1957, he appeared with his attorney George A. Marcus, Esq., of Schenectady County and entered a plea of not guilty to all indictments and all counts therein. On September 25, 1957 an application was made to assign counsel. Defendant appeared and requested that Mr. Marcus continue to represent him. Accordingly, the application Avas granted, and Mr. Marcus and also Joseph A. Romano, Esq., of Saratoga County, were assigned to conduct defendant’s defense.
Preliminary proceedings were held October 3, 1957 (motion for court order to examine into defendant’s sanity), November 12,1957 (further proceedings on motion to examine defendant’s sanity), and November 25, 1957 (motions for inspection of Grand Jury minutes and for bill of particulars), and each time defendant Avas personally present before the court. On December 11, 1957 defendant withdrew his plea of not guilty, and entered a plea of guilty of murder in the second degree to the first count in that indictment, and also pleaded guilty to sodomy in the first degree on one count of the consolidated indictments for sodomy and assault. Thereupon, the court sentenced him to Clinton Prison for an indeterminate term of 20 years to life on his guilty plea to second degree murder, and to an indeterminate term of one day to life on his plea of guilty of sodomy.
Defendant now applies for a writ of error coram nobis to set aside the judgment of conviction for murder in the second degree, based upon claimed deprivation of constitutional rights, which, it is urged, would render the judgment void. The present application in no Avay refers to his plea of guilty of sodomy. The grounds upon which he relies, and upon which he requests a hearing, are: (a) the detention of petitioner by the New York State troopers on August 25 and August 26, 1957 and the unreasonable delay in bringing him before a Magistrate; (b) the petitioner was subjected to physical force, violence and threats to secure “ confessions ”; (c) the petitioner Avas coerced into pleading guilty to the offense of murder in the second degree; (d) the petitioner was deprived of effective and adequate counsel.
Briefly, defendant alleges he Avas taken into custody by State troopers in Rochester about 8:45 p.m. August 25,1957, and taken *345 to a substation at Henrietta, New York where he was physically beaten and questioned until 2:00 a.m. That on August 26 he was transported to the substation at Malta (Saratoga County), arriving about 8:30 a.m; that after threats of physical violence, defendant was induced to make an oral and written confession; that he informed the District Attorney, who later entered the room, of his mistreatment. Thereafter, it is alleged, he was taken to the scene of the alleged crime in the early evening of the same day to identify the tree upon which young Peter Curran had been found hanging. That on August 26, 1957, he was brought before a Justice of the Peace and charged with the crime of murder, first degree, and, having waived examination, was committed to jail. That during the first week in September, 1957, the District Attorney secured another statement from defendant on the alleged threat that, if he would not co-operate, ho would go to the chair. That after defendant returned from his examination at Utica State Hospital, defendant’s attorneys on two occasions asked him if he would take a plea, telling him he was facing the electric chair. That defendant’s mother also visited him, and told bim attorney Marcus had talked to her about defendant taking a plea. That on December 2, 1957 defendant’s lawyers, his mother, his stepfather, his sister, and his brother came to talk with him. That his attonieys again urged him to plead guilty to murder, second degree, stating that his chances were slight in case defendant went to trial. That after much discussion, defendant stepped into an adjoining room with Mr. Marcus and still maintained his innocence. That upon returning to the others, a further discussion was held after which Mr. Marcus stated that he and attorney Romano would leave defendant alone with his family for an answer, reminding him that he might well be facing the electric chair. That with the attorneys gone, defendant’s mother and brother prevailed upon him to do what his attorneys advised. That defendant then relented and advised Mr. Marcus he would follow his suggestion; that a few days later, Mr. Marcus advised defendant the District Attorney had agreed to a lesser plea, subject to the court’s approval.
The People submitted opposing affidavits denying, generally, the material parts of defendant’s petition. However, for the purposes of this motion, and the request for a hearing, the court considers the allegations in the petition as substantially true. It might be noted defendant’s attorneys have restricted their affidavits (to only denials) as to the alleged conversations with defendant (which he purports to quote verbatim in great *346 detail), for the reason there might be some violation of sections 353 and 354 of the Civil Practice Act relating to privileged communications between attorney and client.
; There can be little doubt that, defendant’s counsel were qualified and experienced members of the Schenectady and Saratoga Bar, Mr. Marcus having been an attorney for 40 years, and Mr. Romano about 30 years. Mr. Marcus, in particular, has had wide experience in criminal matters, both as a prosecutor and as defense attorney. Nor is it disputed that Mr. Marcus was appointed by the court as one of the attorneys to represent defendant at his own request.
On his application defendant places great reliance on the recent memorandum decision of the Court of Appeals in People v. Berger (9 N Y 2d 692) which reversed the Appellate Division (10 A D 2d 619) which had affirmed without opinion an order of the Court of General Sessions, New York County (22 Misc 2d 309). The lower court denied, without a hearing, defendant’s motion for a writ of error coram nobis setting aside a judgment of conviction on his plea of guilty for the crime of murder, second degree. From the facts in the Berger case, it appears defendant, together with two others, was indicted for murder in the first degree. After the trial commenced, defendant withdrew his original plea of not guilty and entered a plea of guilty to murder in the second degree. At the time defendant was sentenced, one of his assigned attorneys advised the court defendant had told a probation officer that he was innocent. The attorney then requested that defendant be permitted to withdraw his guilty plea, but his motion was denied. Thereafter defendant stated to the court that a confession was extorted from him by the prosecutor after a day and a half without sleep or food; that the change in his plea was exacted from him by his attorneys and his sister. One of defendant’s assigned attorneys told the court that defendant, and those indicted with him, were guilty, no question about it. The attorneys did not file a notice of appeal in defendant’s behalf. In his application for the writ, defendant Berger alleged that shortly after the trial commenced, a recess was called and he and his codefendants and nine assigned attorneys and several court attendants gathered in a juryroom. That his attorneys informed him that the prosecutor had' agreed to accept a plea of guilty of murder, second degree, provided all defendants so pleaded; that he told his attorneys he was innocent and wanted to proceed with the trial; that his attorneys informed him he had no chance of being acquitted; that his sister was called into the room and argued with him, and, according to the opinion below, he was urged to *347 plead guilty so “ as to save the lives of all concerned ”; that he became upset and, against his will, signed a paper placed before him whereby he pleaded guilty. Berger further alleged his confession was extorted from him by the prosecutor; that his attorneys abandoned him at the trial, and the court should have appointed new counsel.
The Court of Appeals reversed and remitted the matter to the Court of General Sessions for a trial of defendant’s allegations of abandonment by counsel and coercion in the procurement of his confession and plea of guilty.
In this court’s opinion the facts in People v. Berger (supra) in many essential respects are dissimilar to the assumed facts on this defendant’s application. An examination of the record at the time of sentence in the Berger case served to fortify defendant’s allegations in his application for the writ. The facts in the Berger case represent an extreme situation, perhaps foreshadowed by the opinion in People v. Hernandez (8 N Y 2d 345, 347) wherein the court stated, “ Although cases may arise where we may find that the constitutional rights of a defendant are violated because the representation of retained counsel is inadequate * * * this is not such a case. The alleged misconduct of counsel chosen by defendant cannot be attributed to ! action on the part of the State ’ (see People v. Tomaselli, 7 N Y 2d 350, 354 and People v. Brown, 7 N Y 2d 359) and even if proven would not constitute a denial of due process.”
In People v. Tomaselli (supra, p. 354) the court in discussing defendant’s claim that he was improperly represented by his assigned counsel stated :
“ A reading of the pertinent decisions including those urged upon us in the defendant’s behalf * * * makes it clear that post-conviction relief is available to a defendant only where it is action on the part of the State, through court, prosecutor or other law enforcement officer, which brought about a denial of effective assistance of counsel or an interference with the defendant’s right to such assistance.” And further (p. 356): ‘ ‘ In short, there is denial of effective representation of counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it.
“ Indeed, to hold otherwise' would require a rule that a conviction must be vacated solely on the ground that assigned counsel was negligent or otherwise at fault in performing his duty. Although we do not condone or make light of an alleged failure on the part of any lawyer to serve his client adequately, it furnishes no basis either in reason or authority for setting *348 aside a judgment. Since, therefore, the defendant Tomaselli would not be entitled to relief even if the allegations of his petition were to be established, the courts below were justified in denying the application without a hearing. * * *
“ This court has ever acknowledged that coram nobis serves a vital function and that there is a real need to assure to an accused the effective assistance of competent counsel. Full and unstinting recognition of this principle, however, must not lead us to apply an impossible standard or impose on our courts a duty impossible of fulfillment, nor should it lead us to penalize the People solely because of an asserted failure on the part of assigned counsel to represent his client properly. An effective assignment there must be, but this does not mean that a court, once it has appointed a member of the Bar to act for the defendant, must stand as surety for the proper performance of counsel’s professional duty.”
In People v. Brown (7 N Y 2d 359, 361, supra) the court also observes: “ Coram nobis may not be availed of to remedy counsel’s negligence or error of judgment. It would be folly indeed for the courts to sit and hear disappointed prisoners try their former lawyers on charges of incompetent representation. Absent evidence that the trial judge appointed an attorney who was unfit to defend the accused or that the judge allowed counsel to continue to act after it appeared that his representation was such as to make the trial a farce and a mockery of justice, the fact, if it was one, that assigned counsel made an error of judgment or of tactics during the course of trial is an insufficient ground for coram nobis and, this being so, it would be futile to have a hearing.”
More closely akin to the facts presented by this present application would seem to be the case of People v. Battice (5 N Y 2d 946) which affirmed, without opinion, a memorandum decision of the Appellate Division (6 A D 2d 773) which in turn affirmed an order of the lower court denying, without a hearing, a motion by defendant for a writ of error coram nobis. In that case it appears defendant was indicted for murder in the first degree. On April 19, 1955 he entered a plea of not guilty and, upon his request, three attorneys were assigned to defend him. On May 13, 1955 defendant appeared before the court and openly stated lie had no confidence in, and did not want, two of his attorneys, one of them having advised him that he had 48 hours to make a decision. On the following May 24, defendant again appeared before the court. One of his attorneys stated defendant had decided to withdraw his plea of not guilty to the crime of murder in the first degree and plead guilty to the crime of murder in the *349 second degree. The People recommended acceptance of the plea. The court then addressed defendant as follows: “‘ [D]o you now desire to enter a plea of guilty to the crime of Murder in the Second Degree! ’ Defendant answered ‘ Yes.’ The court then said: 1 Did you, sometime about 5:30 a.m. on March 27th, 1955, in a rear top floor apartment located at 928 East 169th Street in the Bronx, the home of the deceased and his wife, while they were in bed, did you go to that home with a loaded firearm and shoot the deceased, he dying as a result of this gunshot Avound? Did you do that? ’ The Defendant, ‘ Yes.’ The Court: ‘ Are you guilty of this charge ? ’ The Defendant: ‘Yes.’” (5 NY 2d 946.) More than 30 days later at the time of sentencing defendant appeared before the court and said he was coerced into accepting a plea of murder in the second degree by his counsel, and that his request for dismissal of counsel had been denied. After pleas by each of his assigned attorneys for leniency, defendant Avas sentenced to prison for a minimnm of 20 years and a maximum of life. Thereupon, defendant said that, in spite of what he had said about his attorneys, he wished to thank the court for such sentence.
On his application for the Avrit, Battice claimed he was denied the right to conduct his oavh defense and Avas compelled to retain the services of hostile counsel; that his plea of guilty was obtained by the coercion, misrepresentation and knowing suppression of vital facts by his counsel. The alleged misconduct or coercion was based upon statements which Battice said one of his said counsel made to the effect that he would ‘ ‘ burn in the chair ” if he did not plead guilty, and that he had 48 hours to make up his mind.
The records at the time of sentencing in the Battice case (supra) and the Berger case (9 N Y 2d 692, supra) may be compared Avith the record in the present case. Mr. Marcus, after stating he had conferred with the District Attorney and his assistant, asked permission to withdraw the plea of not guilty and to plead guilty of murder in the second degree. After Avhich the court stated: “Mr. Marcus, so that I may clearly understand your position, I gather that you uoav seek permission to withdraAv the defendant’s plea of not guilty to the first count of this Indictment No. 1124, and that the defendant Avishes to offer a plea of guilty to murder in the second degree to this common law count, is That it? ” Mr. Marcus: “ That is correct, Your Honor.” The court: “Donald Smith, you have conferred Avith your attorneys, Mr. Marcus and Mr. Romano, in reference to this changing of your plea as has just been stated in open court?” Defendant: “ Yes, I have, Your Honor.” *350 The court: “And you clearly understand, Mr. Smith, that in changing your plea of not guilty to one of guilty as now proposed you would, in effect, be interposing a plea of guilty to common law murder in the second degree ? ” Defendant: “ Yes, I do.” After receiving a recommendation of the District Attorney, the court stated: “ Defendant, Donald Smith, do you desire at this time that the court entertain that application? ” Defendant: “ Yes, I do, Your Honor.” And again at page 68: The court: ‘ ‘ Again, Mr. Smith, I understand your desire is that this court accept a plea of guilty to common law murder in the second degree under the first count of Indictment No. 1124, involving the death of Peter Curran? ” Defendant: “Yes, I understand, Your Honor.” The court: “ What is your plea to the first count of that indictment? ” Defendant: “ I plead guilty to second degree murder.” The court: “All right, the previous plea of not guilty to count one, Indictment No. 1124, on the application of defendant’s counsel, is permitted to be withdrawn, and the court accepts your plea of guilty to common law murder in the second degree.” Thereafter, the defendant’s statement was taken by the court and before sentencing Mr. Marcus made his statement wherein he said, in part, “ Counsel have discussed the facts of this case at length with the defendant and the members of his immediate family and, with their consent and approval, Mr. Romano and I have concluded that the interest of this defendant would best be served by this plea of guilty of murder in the second degree which we have just entered.” There followed similar procedure in relation to defendant’s plea of guilty to the first count of the consolidated indictments for sodomy and again the record discloses the defendant’s plain understanding and desire to also plead guilty to that charge. The whole proceedings lasted for more than an hour, and defendant was at all times present.
In many respects the record in this case is stronger than the facts which appeared on the record in the Battice case (supra) in which a hearing was denied. Through all the times defendant appeared in court, between his arraignment on September 23, 1957 to his date of sentencing on December 11, 1957, he gave no indication whatsoever, either by statement or inference, that he was dissatisfied with his counsel. He was given every opportunity to address the court, and he made it clear it was his desire to plead guilty to murder in the second degree. None of the facts which were brought before the court in the Berger case (supra) at the time of sentence, were presented by the defendant in the instant case. Smith at no time told the court he was innocent, or that he had any desire to do otherwise than plead *351 guilty to the reduced charge. Nor is there presented the situation observed in the Berger case where a recess was called during trial and a gathering of codefendants, their lawyers and others was held, and appellant was informed, in effect, that the District Attorney would not accept a plea to a reduced charge unless all, including the appellant, would agree to so plead, thereby in a sense making him responsible, if he refused, for the possible conviction and death penalty of his codefendants. Note too the possible inference of unfair coercion by the prosecutor. Nor is there presented in the instant case, even remotely, the additional and unusual circumstances found in the Berger record, wherein that appellant’s attorneys after requesting that his guilty plea be withdrawn, instead of insisting upon that request, told the court there was no question but that appellant was guilty, and upon denial of the request, took no appeal. From the record itself in the Berger case and the surrounding circumstances, there was ample demonstration requiring a hearing on appellant’s application for coram nobis.
The record and circumstances in the present case, however, do not persuade this court that defendant was not adequately represented, or that his plea was not made of Ms own free will. Upon careful reading, defendant’s representation of coercion by his counsel, amounts to little more than advice which attorneys may well have a duty to give their clients after studying all the circumstances in a case. Advice or persuasion is one thing; coercion and abandonment by hostile counsel is an entirely different matter. Defendant was not compelled to accede to or follow Ms counsels’ advice. Certainly, defendant as well as his legal advisers were aware that a conviction of first degree murder could mean a death penalty. The final decision could only be made by the defendant on whether to take that chance. However, there is no indication that, if defendant had chosen to stand trial, his counsel would not have continued to defend him with the same ability demonstrated in the preliminary investigation and proceedings. After deciding on December 2, 1957 to plead guilty if the charge was reduced, defendant could have changed his mind at any time prior to or at the proceeding held December 11, 1957.
From the record itself it does not appear that a hearing must be granted on the defendant’s allegations. (See People v. White, 309 N. Y. 636, 641; People v. Battice, 5 N Y 2d 956, supra; People v. Hughes, 10 A D 2d 990; People v. Neeley, 4 A D 2d 1019; People v. Roberts, 25 Misc 2d 321; People v. Moore, 284 App. Div. 925.)
*352 The other grounds urged by defendant are unavailable to a petitioner on a coram nobis application. Upon similar allegations of unreasonable delay in arrest and arraignment, and that a confession was obtained by force, the Appellate Division, Third Department, in People v. King (284 App. Div. 1015) stated: ‘ ‘ With full knowledge of the alleged delay in arraignment and of the manner in which his confession was obtained, each defendant chose not to litigate any issues arising therefrom but to enter a plea of guilty to a lesser crime than charged by the indictment. Litigation, now, of those issues need not be required.” (See, also, Matter of Hedgecock v. Oneida County Court, 19 Misc 2d 459; People v. Butler, 16 Misc 2d 1100; People v. De Barros, 1 A D 2d 845.)
Since defendant’s claims are without merit, the application is in all respects denied in that no triable issues of fact are presented.